No. 3812

Second Circuit

———

HAYES v. GUNTER BROS. LUMBER CO. ET AL.

———

(July 5, 1930. Opinion and Decree.)
(July 31, 1930. Rehearing Refused.)

———

Pugh, Grimmet & Boatner and J. N. Marcantel, of Shreveport, and Spearing & Mabry, of New Orleans, attorneys for plaintiff, appellee.

Lewell C. Butler, of Shreveport, attorney for defendants, appellants.

ODOM, J. Arthur Hayes was run over and killed by a two-ton motortruck owned by the defendant company and operated at the time by one of its servants. This suit is brought by the widow and minor children of the deceased for damages. The case was tried before a jury, which found for plaintiff, and this appeal is by defendant from a judgment approving the verdict.

The verdict of the jury is not supported by the testimony, and must be reversed. The deceased was struck and killed by defendant's truck in the daytime on a paved highway in Caddo parish just as he stepped out into the road from behind an automobile parked on the side of the road. At the time he walked out into the road he was looking down reading or looking over some checks which had just been handed him by Mr. Hamilton to pay some laborers who were working under him clearing a right of way at that point for an electric power line. He did not look either way before going into the road. At the time he went into the road, defendant's truck was so close upon him that the driver could not avoid striking him. The acts of negligence charged against defendant's driver are that he saw deceased in the road when he was 200 feet away, but continued to go forward without checking the speed of the truck, and without giving any warning signal, by horn or otherwise; that the truck was not in gear, was coasting down the hill noiselessly at an excessive rate of speed.

If the testimony supported the allegation and contention that the truck driver saw the deceased or could have seen him, if he had been looking as he should, in a dangerous position in the road, in time to avoid striking him by taking all reasonable precautionary measures to save him and failed to do so, the defendant would be liable under the last clear chance rule, even though deceased was grossly negligent in putting himself in such position of peril. But such are not the facts.

Deceased was foreman of a squad of laborers engaged in clearing the right of way adjacent to and parallel with the highway for the construction of an electric power line. On the morning of the accident he went to the scene in his truck, parked it on the right-hand side of the road going north, got out and left it. Later in the day Mr. Charles Hamilton, who was general superintendent of the work, went to the scene in his automobile, parked it on the opposite side, or right-hand side of the road going south, at a point approximately 75 feet south of where deceased had parked his truck. Hamilton called deceased to him and handed him a batch of checks with which to pay the laborers. The two had a conversation lasting some five or ten minutes, after which Hamilton left deceased, got into his automobile and started the engine. About the time he did so, he

saw defendant's truck some fifty or seventy-five yards away coming down an incline towards him from the south. Before Hamilton moved his car, the truck passed by, missing the car about five or six feet. The truck hit deceased after it passed the car at a point near the middle of the road and north of the rear end of the parked car. Hamilton did not see the accident and knows nothing of deceased's movements after the two ended their conversation. Hamilton was the only witness, except the coroner, called by plaintiff, and it is contended that his testimony shows that deceased, before going into the road, was standing where the truck driver could have seen him, if he had looked, could have seen him when he started towards the road at a sufficient distance to avoid the accident, if he had taken proper precautions.

Hamilton's testimony shows that, while he was talking to deceased and when he handed him the checks, the two were standing on the east side of the highway, north of the rear end of the automobile. There is where Hamilton left deceased standing, and he does not know when deceased made his move into the road. Hamilton says that the truck driver could have seen his (Hamilton's) movements as the road was open and it was daylight, and from this it is argued that the truck driver could have seen deceased and his movements also, and there is a portion of his testimony which, if taken alone, would indicate that he intended to leave that impression. The truck driver could have seen Hamilton, because after he left deceased he walked south from the rear on the left-hand side of the car to the door which was next to the road. That threw him out into the road in plain view. He says the driver could have seen him, and was asked:

"Could Mr. Hayes (deceased) be seen from the top of the hill by the driver of the truck at that time?"

And he answered:

"I think he could, from where we were talking to where I left him."

From this testimony, it will be noted that he is not positive. He *thinks* he could have been seen. Mr. Hamilton was questioned as to where the two were standing during the conversation, and where he left deceased. On page 8 of the record, he was asked:

"Where were you at the time you were talking to Mr. Hayes?"

And he said:

"Well, we were on the side of the highway, kind of behind my car."

On page 9, he said he was getting ready to leave, and was asked:

"Where was Mr. Hayes standing about that time?"

He answered:

"Well, along about the back end of my car.
"Q. Right there at the car?
"A. Yes, sir.
"Q. How many feet from where you were do you suppose when you got into your car?
"A. Well, was not over six or eight feet, just behind the back wheel like."

Taking Mr. Hamilton's testimony as a whole, and construing it liberally in favor of plaintiff, the most that can be said is that there is doubt as to just where the two were standing during the conversation.

Now, when we turn to the testimony of the other four eyewitnesses, all doubt on

this very material point, that is, whether the truck driver could have seen deceased before the very moment he walked out into the road, and as to the distance the driver was from him at that moment, is removed. Three of the colored men who were working for the deceased in the gang, clearing the right of way, were called as witnesses. Each one testified positively that he saw the accident and that deceased walked out into the highway from behind the Hamilton car immediately in front of the moving truck when it was almost upon him; that deceased was looking down, reading, or looking over the checks which he had in his hand and that he did not look up or to the side. The truck driver was a young white man, twenty-two years old, who is vouched for as a careful, conservative driver by his employers, and testified that deceased stepped out from behind the parked car just in front of the truck when he was only fifteen or twenty feet away; that he did not and could not see him until the moment he came into the road; that he then applied his brakes (which took effect, as evidenced by skid marks on the pavement), swerved his truck to the right as quickly as he could, but not in time to avoid the accident. This witness and the three colored men each testified that the truck driver was sounding his horn continuously from the moment he came over the hill to about the moment of the accident, although Mr. Hamilton said that he did not hear it. We can easily understand why Mr. Hamilton did not hear the horn. He was in his car and the engine was running. The fact that the horn was blowing is established by a decided preponderance of the testimony.

The testimony of these colored men is criticized by counsel for plaintiff, it being suggested that as they were at work at the time, or supposed to be, they probably did not see the accident. But we can imagine no reason, and none has been suggested, why these colored men should get together and cook up a case for the defendant company composed of men whom they did not know, and for whom they had never worked, against the widow and children of the man for whom they were working, and who was almost in the act of handing them their pay checks.

Counsel in their brief say, in speaking of the truck driver's testimony:

"Mr. Eddington testifies * * * that he first saw deceased when he was about thirty yards from him."

Counsel, of course, did not intend to mislead the court. When we read the testimony referred to, we find that counsel are mistaken, as disclosed by the following, at pages 66 and 67:

"Q. How far were you, or how far was Mr. Hayes' truck from you when you first saw him that morning?
"A. When I first saw him that morning?
"Q. No, just before the accident occurred.
"A. His truck was about thirty yards when I seen it.
"Q. When you first saw him?
"A. Yes, sir."

It is perfectly evident that the witness did not mean that deceased was thirty yards ahead when he first saw him. He was speaking of the distance of the truck when he first saw deceased. This testimony is consistent with the truck driver's other testimony to the effect that deceased stepped into the road about fifteen or twenty feet ahead of the moving truck, the truck which the witnesses referred to as seeing ahead of him being parked still further down the road.

The truck driver testified that he sounded his horn while coming towards deceased, and was asked if he did not tell the coroner on the day of the accident that he gave no alarm, and he said that he did not remember. The coroner was called and testified as follows:

"Well, I wrote it down as he gave it, and that he was not going very fast and he thought that he could miss him, go around him instead of sounding his horn."

From the coroner's report of the accident, we quote the following:

"Carl Eddington (the truck driver) driving an International truck with trailer, coming from Bethany, going down grade headed towards Greenwood, was apparently driving pretty fast, just as Mr. Hayes was crossing the road and looking at the checks that he had in his hand. He says he did not sound his horn but tried to turn to the right and miss Mr. Hayes. * * * Eddington voluntarily testified and stated that he did not think he was going very fast and that he did all in his power to avoid hitting Mr. Hayes even to running into the other truck and wrecking both trucks. He said that Mr. Hayes stepped from behind the Ford car, and he did not see him until it was too late."

There is nothing in this to indicate that Eddington testified before the coroner that he did not sound his horn while coming down the road. It is evident that the horn was not blowing at the moment of the accident, and that was probably what the witness said, or meant to say, to the coroner. When he saw Mr. Hayes step out in front of the truck, he at once began to manipulate it so as to avoid the accident. A further alarm could avail nothing.

We think the driver was guilty of negligence in that he was going at approximately twenty-five miles an hour, instead of eighteen fixed by the statute, and was coasting. Even so, plaintiff cannot recover on account of the gross contributory negligence of deceased, which was the direct proximate cause of the accident. The case of Collier v. Frank Varino & Co. et al., 153 La. 636, 96 So. 500, 501, is on all fours with this one. There the court said:

"Even if the driver of the truck had been guilty of negligence, the contributory negligence of deceased was clearly the proximate cause of his untimely death. Placing himself, as deceased did, unexpectedly in front of the truck, its driver was deprived of the last clear chance of preventing the collision."

Other cases in point are the following: Biagi v. New Amsterdam Casualty Co. et al., 151 La. 925, 92 So. 387; Roder v. Legendre et al., 147 La. 295, 84 So. 787; Folwell v. Demack Motor Car Co. et al., 144 La. 783, 81 So. 313.

Counsel for plaintiffs in their brief state that if the court should hold that deceased was negligent, plaintiffs are entitled to recover because defendant's driver had the last clear chance to avoid the accident. There is no room for the application of the last clear chance rule here. When deceased walked out into the road from behind the parked car, where his presence was concealed from defendant's driver, the truck was so close upon him that it was impossible for the driver to avoid striking him.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the verdict of the jury and the judgment based thereon be, and the same are, reversed; and further ordered that plaintiffs' demands be rejected and their suit dismissed, at their costs in both courts.